Stile v C-Air Customhouse Brokers-Forwards, Inc. (2026 NY Slip Op 01746)

Stile v C-Air Customhouse Brokers-Forwards, Inc.

2026 NY Slip Op 01746

Decided on March 24, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 24, 2026

Before: Manzanet-Daniels, J.P., Shulman, Rodriguez, Higgitt, Rosado, JJ.

Index No. 656575/20|Appeal No. 6186-6187-6188-6189|Case No. 2023-02039, 2023-02923, 2024-00365|

[*1]Clare Marie Stile etc., Plaintiff-Appellant-Respondent,
vC-Air Customhouse Brokers-Forwards, Inc., et al., Defendants-Respondents-Appellants.

Lazarus & Lazarus, P.C., New York (Yvette J. Sutton of counsel), for appellant-respondent.
Herrick Feinstein LLP, New York (John H. Chun of counsel), for respondents-appellants.

Order, Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about April 21, 2023, which granted defendants' motion to quash a non-party subpoena served on Bank of America and for a protective order, and denied plaintiff's motion to compel discovery, unanimously reversed, on the law, without costs, the order vacated, and the matter remanded to the Supreme Court to determine the scope of permissible discovery at a hearing. Order, same court and Justice, entered May 16, 2023, which granted plaintiff's motion for leave to reargue the and, upon reargument, adhered to the prior order, unanimously dismissed, without costs, as academic. Order, same court and Justice, entered on or about December 18, 2023, which granted defendants' motion for summary judgment dismissing plaintiff's complaint and denied defendants summary judgment on their counterclaim, unanimously modified, on the law, to deny so much of the motion as sought dismissal of plaintiff's second cause of action for shareholder oppression and tenth cause of action for a declaration that plaintiff owns at least 33% of the defendant corporations, and those causes of action reinstated, and otherwise affirmed, without costs.
In a prior appeal from the denial of defendants' pre-answer motion to dismiss the complaint, we found the meaning of the word "transfer" to be ambiguous insofar as used in section 10(d) of the settlement agreement, wherein plaintiff's now-deceased husband Salvatore agreed that in the event he "transfers, or otherwise disposes of . . . any interest in his shares of stock of [defendant corporations, C-Air Customhouse Brokers-Forwards, Inc., and C-Air International, Inc. (collectively "C-Air")], then all payments and benefits due pursuant to [the settlement agreement] shall immediately cease by C-Air," and that "no transfer shall be authorized unless and until the buyer, transferee, assignee or pledge shall agree in writing to be bound by the terms and conditions of" certain other provisions of the agreement. We found it to be "unclear if 'transfer' includes a transfer by operation of law, i.e., the transfer to Stile's estate when [Salvatore] died" (Stile v C-Air Customhouse Brokers-Forwards, Inc., 204 AD3d 429, 432 [1st Dept 2022]). That finding is law of the case (see Martin v City of Cohoes, 37 NY2d 162, 165 [1975]).
The extrinsic evidence presented on defendants' summary judgment motion does not resolve this ambiguity. For example, the testimony of the attorney who drafted the settlement agreement was inconclusive as to why "transfers" contemplated by the agreement were not limited to those made during Salvatore's lifetime. The testimony of Salvatore's attorney who was involved in the drafting of the agreement was similarly equivocal. Notably, while paragraph 10(d) is not explicitly limited to lifetime transfers, the provision applies to situations where "he [Salvatore]. . . transfers" any interest in his shares of stock — thus suggesting that the provision may have been limited to transfers that occurred during his life. Without conclusive evidence to resolve this ambiguity, issues of fact concerning the parties' intention preclude summary judgment on the second and tenth causes of action based on plaintiff's failure to execute a transferee agreement.
Further, as we previously found, "if it is ultimately determined that [paragraph 10(d)] applies to transfers by operation of law, plaintiff should be given the opportunity to execute such a writing" (Stile, 204 AD3d at 432). Plaintiff has not been provided with a sufficient opportunity to execute the transferee agreement following a determination on the merits on this issue.
The court did, however, properly dismiss plaintiff's fourteenth and fifteenth causes of action, which sought the repayment of money Salvatore had loaned to C-Air. We agree with plaintiff that the calculations made by the designated accountant were not binding because, as this Court previously determined, the parties did not appoint him within the 30-day deadline imposed by the settlement agreement (id. at 433). However, plaintiff has produced no evidence raising a question of fact regarding the accuracy of the calculations, which established that defendants have already satisfied the debt.
The court also properly dismissed defendants' counterclaim for breach of the settlement agreement based on plaintiff's attempts to obtain books and records in violation of the agreement. Paragraph 7 of the settlement agreement was restricted to suits "related to the operation and/or business of C-Air" and explicitly excluded "the issue of any sums due and owing to [Salvatore] for loans he made to C-Air," and not to a declaration concerning plaintiff's ownership interest or shareholder oppression claim.
However, Supreme Court improvidently granted defendants' motion to quash a subpoena served on Bank of America and denied plaintiff's motion to compel discovery based on its conclusion that they were precluded by the settlement agreement . It is true that we previously concluded that plaintiff was bound to Salvatore's agreement to not "make any request or demand to inspect the records of [C-Air]," at least insofar as it extends to his capacity as a shareholder (see Stile, 204 AD3d at 433). However, this does not end the analysis.
"Under New York law, shareholders have both statutory and common-law rights to inspect a corporation's books and records so long as the shareholders seek the inspection in good faith and for a valid purpose" (Retirement Plan for Gen. Empls. of the City of N. Miami Beach v McGraw-Hill Cos., Inc., 120 AD3d 1052, 1055 [1st Dept 2014]). These rights exist independently of a litigant's broad disclosure rights in pursuing or defending an action (see e.g. Lee v Manchester Real Estate & Constr. LLC, 2014 NY Slip Op 30675[U] [Sup Ct NY County 2014] [finding that a litigant's "rights to inspect documents as a member of an LLC [were] distinct from any discovery[] rights she may have" in the action"]). As to discovery rights, New York strongly encourages open and full disclosure into all non-privileged matter sought that is material and necessary to the litigation (see e.g. MSCI Inc. v Jacob, 120 AD3d 1072, 1075 [1st Dept 2014]; see also Reyes v Lexington 79th Corp., 149 AD3d 508, 509 [1st Dept 2017]).
While we previously found that the settlement agreement precluded the second cause of action to the extent it was premised on plaintiff's books and records inspection, we also concluded that it did not prevent the second cause of action to the extent it was premised on defendants' refusal to recognize her as a shareholder (Stile, 204 AD3d at 433). This holding would be rendered meaningless if the settlement agreement's proscription against inspecting the company records as a shareholder applied equally to plaintiff's discovery rights as a litigant, as it would effectively prevent her from proving damages in support of her case.
Nor does our finding provide an end run around the terms of the settlement agreement. Plaintiff's current requests to examine the defendants' books and records flow directly from their refusal to recognize her as a shareholder and plaintiff's efforts to value her shares — something that was not foreseeable and which the settlement agreement did not specifically address. If the parties intended to restrict discovery rights in future lawsuits that were not barred by the terms of the settlement agreement, they would have said so explicitly (see e.g. RMP Capital Corp. v Victory Jet, LLC, 139 AD3d 836, 838-839 [2d Dept 2016] ("[a] court should not imply a term which the parties themselves failed to include"][internal quotation marks omitted]).
Thus, while a books and records inspection is not available to plaintiff in her capacity as a shareholder, the requested information that is material and necessary to her claims and monetary damages calculation must be disclosed. Courts routinely order disclosure of relevant financial information and tax returns where there are issues concerning ownership, value of shares, and the tax treatment of ownership interests (see e.g. Chaudry v Abadir, 261 AD2d 497, 497-498 [2d Dept 1999]). On this record, we cannot determine which records are relevant and necessary for plaintiff's purposes, and the extent to which the depositions should be reopened to permit inquiry into this information. A hearing is therefore necessary to determine the proper scope of discovery
that is material and necessary to plaintiff's claims (Retirement Plan for Gen. Empls. Of the City of N. Miami Beach, 120 AD3d at 1056).
We have considered the remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 24, 2026